UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| PRESTON GERALD CORBIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 6:19-CV-168-REW |
| v. | ) | |
| | ) | OPINION AND ORDER |
| ANDREW SAUL, COMMISSIONER OF SOCIAL SECURITY, | ) ) | |
| | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Preston Corbin appeals the Commissioner's denial of his application for disability insurance benefits (DIB).[1] The Court confronts the parties' dueling summary judgment motions. DE ##18, 22. Having fully reviewed the record per the applicable legal standards, the Court finds in favor of the Commissioner because substantial evidence supports the administrative decision, and the decision rests on legally sound findings.[2]

---

[1] The Court notes that the standards governing DIB mirror those applicable to Supplemental Security Income (SSI) benefits cases. *See Bailey v. Sec'y of Health & Human Servs.*, 922 F.2d 841, No. 90-3265, 1991 WL 310, at *3 (6th Cir. 1991) (table). Indeed, "[t]he standard for disability under both the DIB and SSI programs is virtually identical." *Roby v. Comm'r of Soc. Sec.*, No. 12-10615, 2013 WL 451329, at *3 (E.D. Mich. Jan. 14, 2013), *adopted in* 2013 WL 450934 (E.D. Mich. Feb. 6, 2013); *see also Elliott v. Astrue*, No. 6:09-CV-069-KKC, 2010 WL 456783, at *4 (E.D. Ky. Feb. 3, 2010) ("[T]he same legal standards and sequential evaluation process is employed for making the disability determination regardless of whether an application is for DIB or SSI.").

[2] As the Commissioner notes, Plaintiff's summary judgment motion improperly exceeds the DE #14-allotted page limit. As Corbin nonetheless fails to demonstrate entitlement to relief, though, the unauthorized excess brief has not prejudiced Defendant under these circumstances.

1

**I.      Factual and Procedural Background**

Corbin, 45 years old at the time he was last insured (in December 2017), received formal education through completion of the eighth grade and worked in coal mining, primarily as a roof bolter, for approximately 21 years. R. at 20, 38–40. Corbin protectively filed a Title II DIB application in May 2016, alleging (as amended) disability beginning on August 17, 2016. R. at 19. The SSA denied the claim at the initial level in November 2016, *see* R. at 87–99, and upon reconsideration in April 2017, *see* R. at 101–114. Corbin formally requested a hearing in May 2017. R. at 133–35. The hearing occurred before Administrative Law Judge (ALJ) Joyce Francis on January 18, 2018, in Middlesboro, Kentucky. R. at 35–50 (Hearing Tr.). Attorney Ronald Cox represented Claimant at the hearing, and both Corbin and Vocational Expert (VE) Jane Hall testified. *Id.*

As ALJ Francis noted, Corbin had previously filed two applications for Title II disability benefits—the most recent in September 2012. R. at 19. ALJ Thomas Erwin issued a partially favorable decision on that claim on May 4, 2016, finding Corbin disabled during a closed period between June 30, 2012 and September 30, 2013. R. at 65–86. ALJ Erwin found that, during the closed period, Corbin suffered from several severe impairments, including degenerative disc disease of the cervical and lumbar spines and Hepatitis C. *Id.* ALJ Erwin further found that, upon period end, Corbin regained residual functional capacity (RFC) to perform a full range of light work. *Id.*

Given ALJ Erwin's binding prior decision, ALJ Francis applied *Drummond v. Commissioner of Social Security*, 126 F.3d 837 (6th Cir. 1997), and *Dennard v. Secretary of Health and Human Services*, 907 F.2d 598 (6th Cir. 1990). *See also* Acquiescence Rulings (AR) 98-4(6)

2

and 98-3(6).[3] Under these standards, prior sequential findings (per 20 CFR §§ 404.1520(a) and 416.920(a)) are functionally controlling in this scenario unless the claimant has presented new and material evidence. New evidence is material where it differs from prior evidence and warrants a different finding. R. at 19 (citing AR 98-3(6) and AR 98-4(6)). Following the January 2018 hearing, ALJ Francis issued a decision unfavorable to Corbin. R. at 19–28. ALJ Francis found that Corbin was not disabled, within the meaning of the Act, between the alleged onset date (August 17, 2016) and the date last insured (December 31, 2017).[4] Though she found that Claimant continued to suffer from degenerative disc disease of the cervical and lumbar spines, with cervical cord compression, as well as Hepatitis C—still serious impairments, per ALJ Francis—through the date last insured, she found that Corbin nevertheless had the RFC to perform a full range of light work, per 20 CFR § 404.1567(b), during that period. R. at 25.[5]

ALJ Francis found that the objective record revealed no new, material evidence about either Corbin's degenerative disc disease impairments or his Hepatitis C. R. at 26. She further found that, though Corbin could not perform any past relevant work, there were light-duty jobs that existed in significant numbers in the national economy that he could have performed, considering his age, education, work experience, and RFC. R. at 28. Accordingly, the ALJ found that Corbin was not disabled, within the meaning of the Act, at any point between August 17, 2016 and December 31, 2017. *Id.* Corbin sought review of ALJ Francis's decision in August 2018, and

---

[3] Corbin does not challenge ALJ Francis's application of these standards. The Court has discussed the interplay elsewhere. *See Mounts v. Commissioner of Social Security*, No. 6:18-cv-00261-REW, E.C.F. No. 12, at 6–10.
[4] Claimant does not dispute the last-insured date.
[5] The ALJ further found that new evidence demonstrated that Corbin suffered from several additional conditions that, in her view based on the full medical record, were non-severe and did not more than minimally impact Claimant's ability to work: anxiety, depression, opiate dependence, chronic obstructive pulmonary disease (COPD), migraines, and partial right index finger amputation. R. at 22.

the Appeals Council denied the request on June 20, 2019. R. at 6. This action followed. DE #1 (Complaint). Plaintiff moved for summary judgment in December 2019, *see* DE #18, and the Commissioner cross-moved for summary judgment in February 2020, *see* DE #22. The motions are ripe for review.

**II.      Review Standard**

The Court has thoroughly reviewed and considered the ALJ's decision, the administrative hearing transcript, and the entire administrative record. The Court has turned every apt sheet, focusing on the portions of the record to which the parties specifically cite. *See* DE #14 (General Order 13-7) at ¶ 3(c) ("The parties shall provide the Court with specific page citations to the administrative record to support their arguments. The Court will not undertake an open-ended review of the entirety of the administrative record to find support for the parties' arguments.").

Judicial review of the ALJ's decision is a limited and deferential inquiry into whether substantial evidence supports the ALJ's factual determinations and whether the conclusions rest on proper legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009); *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 422 (6th Cir. 2008); *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989) (citing *Richardson v. Perales*, 91 S. Ct. 1420, 1427 (1971)); *see also* 42 U.S.C. § 405(g) (providing and defining judicial review for Social Security claims) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]").

Substantial evidence is "more than a scintilla of evidence,[6] but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (footnote added); *see*

---

[6] The Commissioner has a confusing quote about the standard on page 1 of DE #22, but the Court applies here the proper measure.

4

*also Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004). The Court does not review a claimant's case *de novo*, resolve evidentiary conflicts, or assess questions of credibility. *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). Similarly, the Court does not reverse findings of the Commissioner or the ALJ merely because the record contains evidence—even substantial evidence—to support a different conclusion. *Warner*, 375 F.3d at 390. Rather, the Court must affirm the ALJ's decision if substantial evidence supports it, even if the Court might have reached a different original outcome in its own view. *See Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999).

In determining disability, the ALJ conducts a five-step analysis. *See Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994); 20 C.F.R. § 404.1520(a)(4). At Step 1, the ALJ considers whether the claimant is performing substantial gainful activity. *See Preslar*, 14 F.3d at 1110. At Step 2, the ALJ determines whether one or more of the claimant's impairments are severe. *Preslar*, 14 F.3d at 1110. At Step 3, the ALJ analyzes whether the claimant's impairments, alone or in combination, meet or equal an entry in the Listing of Impairments. *Preslar*, 14 F.3d at 1110. At Step 4, the ALJ determines RFC and whether the claimant can perform past relevant work. *Preslar*, 14 F.3d at 1110. The inquiry at this stage (if applicable) is whether the claimant can still perform that type of work, not necessarily the specific past job itself. *See Studaway v. Sec'y of Health & Human Servs.*, 815 F.2d 1074, 1076 (6th Cir. 1987). Finally, at Step 5, the burden shifts to the Commissioner, if the claimant cannot perform past relevant work; the ALJ then determines whether significant numbers of other jobs exist in the national economy that the claimant can perform, given the applicable RFC. *See Preslar*, 14 F.3d at 1110; 20 C.F.R. § 404.1520(a)(4). If the ALJ determines at any step that the claimant is not disabled, the sequential

5

analysis there ends. *See Mowery v. Heckler*, 771 F.2d 966, 969 (6th Cir. 1985); 20 C.F.R. § 404.1520(a)(4).

When reviewing the ALJ's application of legal standards, the Court gives deference to her interpretation of the law and reviews the decision for reasonableness and consistency with governing statutes. *Whiteside v. Sec'y of Health & Human Servs.*, 834 F.2d 1289, 1292 (6th Cir. 1987). In a Social Security benefits case, the agency's construction of the statute should be followed "unless there are compelling indications that it is wrong." *Merz v. Sec'y of Health & Human Servs.*, 969 F.2d 201, 203 (6th Cir. 1992) (quoting *Whiteside*, 834 F.2d at 1292).

### III.  Analysis

Corbin broadly contends that ALJ Francis's decision is not supported by substantial evidence. In so claiming, he makes two general arguments: he asserts that (1) ALJ Francis gave insufficient weight to Corbin's subjective pain complaints, and (2) ALJ Francis improperly weighed and/or misinterpreted Dr. Dustin Chaney's medical findings. The Court addresses each argument in turn, evaluating the challenged proof's impact on the overall substantial-evidence calculus.

**1. The ALJ did not improperly discount Corbin's subjective complaints of psychological impairment.**

Corbin substantively confines his subjective-complaint challenge, to the extent he even legitimately makes such a claim, to the effects of his psychological impairments.[7] The Court cabins

---

[7] Corbin does not reference, in the portion of his brief dedicated to subjective complaints, any subjective physical symptom reports or descriptions. He simply contends that the ALJ failed to properly consider and weigh his mental health impairments, before launching into argument concerning the weight attributed to Dr. Chaney's specific opinions and findings. The Court considers the latter arguments in the subsequent section (ultimately finding them meritless). Because Corbin neither discusses, nor even mentions, any subjective complaints related to his *physical* ailments, the Court evaluates only the ALJ's treatment of Corbin's psychological complaints and the supporting evidence for same. Any argument hinging on Corbin's subjective complaints of physical pain is waived, as it is unaccompanied by even minimally developed

6

its handling accordingly. Corbin was hospitalized in December 2016, for reasons in part related to mental health, at Harlan Appalachian Regional Hospital (ARH);[8] Corbin spent approximately five days receiving psychiatric care at Harlan ARH during this period. R. at 579. Upon admission, Corbin exhibited suicidal and homicidal thoughts; he further "present[ed] himself as rude" and "rac[ist]," and he noted a history of using street drugs to manage pain, depression, and anxiety. R. at 579–85. However, at discharge, provider notes reflect that Corbin was alert and oriented, exhibited fair insight and judgment, and displayed a positive (euthymic, in medical jargon) mood, without suicidal or homicidal thoughts. R. at 579. Though the records from Corbin's brief stay note that his depression and dependency disorders persisted, they confirm the efficacy of treatment during this period. *Id.* Further, progress notes from January 2017 observe improvement and post-discharge success with prescribed medications. R. at 654 (noting that Corbin had "been doing better on the discharge medications[,]" was "sleeping and [eating] better[,]" and had "organized" thoughts and interest in "pleasurable activities"). By March-April 2017, Corbin remained successful on his medications, and, though still suffering from anxiety and depression, had clear and coherent thought patterns and did not exhibit any suicidal or homicidal tendencies. R. at 665–

---

argument or citations to authority. *See Stiltner v. Comm'r of Soc. Sec.*, 244 F. App'x 685, 686 (6th Cir. 2007) (observing that the plaintiff "waived any argument regarding" a particular provider "by not including it in her brief"); *Kennedy v. Comm'r of Soc. Sec.*, 87 F. App'x 464, 466 (6th Cir. 2003) (citation omitted) ("[Issues] adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived."); *Parker v. Comm'r of Soc. Sec.*, No. 5:16-CV-278, 2017 WL 2859801, at *3 (N.D. Ohio May 9, 2017), *report and recommendation adopted*, No. 5:16-CV-278, 2017 WL 2840763 (N.D. Ohio July 3, 2017) (discussing "the well-stated concern that judicially reviewing non-briefed claims would have the perverse result of encouraging claimants to simply rely on the reviewing court to become their advocate").

[8] Corbin also suffered from pneumonia at the time and spent roughly two days receiving emergent treatment for such before transitioning to psychiatric care. R. at 545–56.

7

70. Additionally, Corbin progressed in substance abuse treatment through the end of 2017, with records indicating generally appropriate thoughts and behavior.[9] R. at 671–766.

At the hearing before ALJ Francis, Mr. Cox questioned Corbin about his mental health issues and treatment between 2016 and 2017. R. at 44–46. Corbin acknowledged his prior issues with suicidal and homicidal ideation. R. at 45. When asked whether he was "still having those kinds of problems[,]" Corbin did not directly answer, but he noted that he was "working [on it]" and "dealing with it." *Id.* He further testified that he had trouble sleeping, did not manage or deal with stress, and had trouble concentrating and paying attention. *Id.* Finally, when asked whether his current medication regimen was helping with these issues, Corbin responded, "Not much[.]" *Id.* At the outset, the Court notes that Corbin offered sparse subjective description of or complaints regarding his psychological and other mental health difficulties. However, the impression that Corbin's minimal testimony gives—portraying an individual who cannot sleep, manage stress, or focus his attention, even with medication—contrasts sharply with the bulk of contemporaneous treatment records. As discussed above, Corbin's provider records and various progress notes (both concerning his December 2016 hospital stay and the 2017 year itself) describe Corbin as displaying proper affect, reasonably happy mood, and coherent thought processes. They further note Corbin's success when compliant with prescribed medication regimens and treatment plans.

In context of the full record, Corbin's short, undetailed subjective responses regarding his mental health during the hearing offer little insight into his condition, and the longitudinal, objective medical observations generally do not support his characterizations. The ALJ analyzed

---

[9] During one November 2017 treatment visit, Corbin admitted to isolated methamphetamine use while out with friends, but records characterize his behavior and mental condition as appropriate at the time of receiving the (regular) care. R. at 763–64.

Corbin's complaints within the proper legal framework,[10] and substantial objective medical evidence supports her conclusion that Corbin had only mild mental health limitations (when treated), based on the full record and scope of medical proof. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (observing "that subjective complaints of a claimant can support a claim for disability, if there is also objective medical evidence of an underlying medical condition in the record"); *Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989) ("Subjective complaints of pain or other symptoms may support a claim of disability. However, these complaints must be evidenced by an underlying medical condition, and there must be either objective medical evidence confirming the severity of the alleged pain, or there must be an objectively determined medical condition of a severity which can reasonably be expected to give rise to that pain."). Both providers evaluating Corbin's mental limitations, Dr. Gonzalez and Dr. Perritt, opined that Claimant did not have a severe mental impairment during the relevant timeframe. *See* R. at 94–95 (Dr. Gonzalez's findings) (finding only mild impairments); R.at 109 – 10 (Dr. Perritt's findings) (same).

Further, contrary to Corbin's representations regarding medication efficacy, the bulk of evidence in the record indicates that Corbin functioned normally and progressed well when compliant with medication and treatment plans. *See* § 404.1529(c)(3)(iv) (directing the ALJ to consider the effectiveness of ameliorative medication when assessing symptoms). And, consistent with the objective medical evidence (and contrary to Corbin's self-reports), ALJ Francis observed that Corbin "did not display difficulties in understanding or appropriately answering questions

---

[10] ALJ Francis evaluated Corbin's complaints and the medical proof related to mental health in context of "the four broad areas of mental functioning set out in the disability regulations for evaluating mental disorders and in the Listing of Impairments[,]" (12.00) colloquially known as the "paragraph B" criteria. R. at 23 (citing 20 CFR, Part 404, Subpart P, Appendix 1). Corbin does not challenge the legal standard ALJ Francis utilized, and, in any event, the Court finds her approach legally correct.

during his hearing." R. at 24. Indeed, "[d]espite describing racing thoughts, [Corbin] maintained normal concentration during his hearing." *Id.*; *see* § 404.1529(c)(3) (noting that ALJs may consider, in assessing the entirety of the evidence, in-person observations); *cf. Weaver v. Sec'y of Health & Human Servs.*, 722 F.2d 310, 312 (6th Cir. 1983) (finding that an ALJ's personal observations during the hearing are properly considered in conjunction with other evidence, but may not be the sole basis for discounting subjective complaints).

In sum, given the objective medical proof in the record, and ALJ's Francis's observations that were generally consistent with that proof, the Court cannot find that the ALJ reversibly erred in weighing Corbin's contrary subjective mental health complaints as she did. Moreover, ALJ Francis applied the correct legal standards (a matter unchallenged in this appeal), and substantial objective evidence supports her finding that Corbin's psychological issues were not, during the relevant period, severe enough to materially limit his ability to work. The Court thus finds no reversible error with respect to ALJ Francis's weighing of Corbin's asserted mental limitations.[11]

**2. The ALJ did not improperly weigh Dr. Chaney's findings and opinions.**

Plaintiff's argument concerning the import of Dr. Chaney's conclusions is twofold. First, he argues that the ALJ should not have relied upon Dr. Chaney's opinions because he later

---

[11] Corbin further (very briefly) contends that the ALJ "failed to address [Corbin's mental health] issues to the Vocational Expert at the Hearing." DE #18-1 at 13. This is not the case. As ALJ Francis recognized in her decision, *see* R. at 24, the "paragraph B" criteria themselves "are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process." SSR 96-8p, 1996 WL 374184, at *4 (July 2, 1996). Rather, the steps 4 and 5 RFC assessment "requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments[.]" *Id.* The hearing record confirms that the hypothetical scenarios that the ALJ presented to VE Hall accounted for various functional mental limitations. *See, e.g.*, R. at 47 (hypothetical accounting for various degrees of memory, concentration, attention, and interpersonal interaction capabilities); R. at 48 (same). Corbin simply disagrees with the ALJ's ultimate balancing of the mental health evidence and her decision as to his mental limitations' impact on his overall RFC. The Court has addressed, and rejected, that argument.

surrendered his license and served a brief prison sentence, for failure to adequately supervise a physician working in his clinic. Second, Corbin claims that the ALJ misinterpreted Dr. Chaney's findings and opinions. Neither claim succeeds.

Despite Corbin's primary assertion that ALJ Francis "failed to address that Dr. Chaney was forced to surrender his license in less than 2 months after his examination in this case[,]" he expressly recognizes that "[t]he ALJ acknowledged [Dr. Chaney] was sentenced to a short prison term for failure to supervise a doctor working in a clinic and determined this was not a significant factor in whether or not to rely upon Dr. Chaney's opinions." DE #18-1 at 14. ALJ Francis discussed Dr. Chaney's subsequent suspension and conviction, finding (with explanation) that neither impacted her view of Dr. Chaney's specific medical findings in this particular case. R. at 26. She emphasized that Dr. Chaney's subsequent issues were unrelated to his personal patient care or malpractice attributable to him, noting that his license remained in force when he evaluated Corbin. *Id.* Corbin provides absolutely no argument or citation to authority (or the record) that would undermine ALJ Francis's reasoning in this regard. Indeed, his own two-sentence argument contradicts itself, claiming that the ALJ failed to consider Dr. Chaney's suspension and conviction, and then immediately conceding that ALJ Francis in fact *did* discuss those matters. Corbin offers nothing to impeach the ALJ's treatment of these topics, and the Court flatly rejects his perfunctory indictment of her handling. *See Brenay v. Schartow*, 709 F. App'x 331, 336 (6th Cir. 2017) ("It is not enough for a party to mention a possible argument in the most skeletal way and leave the court to put flesh on its bones.") (internal citations and quotation marks omitted). Chaney's problems may be relevant to issues of credibility and competency, but the argument has no detail, relative to the full record, and the ALJ plainly accounted for the events as she weighed proof. Chaney, the Court must note, was but one voice in a largely harmonizing choir.

11

Corbin further contends that "the ALJ completely disregarded and ignored Dr. Chaney's actual opinions in regard to Mr. Corbin's case." DE #18-1 at 14. In particular, Corbin cites Dr. Chaney's August 2016 opinions that "[a]bilities of kneeling, squatting, bending, and climbing were assessed and were found to be somewhat difficult" for Corbin, and that "[w]ith the findings of physical examination as described above, it would be expected that the claimant would have difficulty performing work activities." R. at 535. However—as Corbin acknowledges—Dr. Chaney, in the same opinion, further found that "[b]ased on today's medical findings, it appears that the claimant does have the ability to perform activities including some sitting, some standing, some moving about, and carrying as well as handling objects with one or both hands." *Id.* Nonetheless, Plaintiff argues that Dr. Chaney's opinion, in this particular instance, mandates a more restrictive RFC finding than light work.

ALJ Francis gave great weight to Dr. Chaney's conclusions that Corbin could perform some sitting, standing, moving, carrying, and handling of objects, finding them consistent with Dr. Chaney's clinical findings and observations. R. at 26. She rejected, however, Dr. Chaney's finding that Corbin may have some difficulty finding suitable work (based in large part on Claimant's limited education), as such assessment is reserved for the ALJ. *Id.* Indeed, Dr. Chaney impliedly recognized such, qualifying his work availability comment accordingly and referring reviewers to the Dictionary of Occupational Titles (DOT) for more precise information. R. at 535. Corbin does not contest that such a determination is properly within the ALJ's purview; rather, he relies upon Dr. Chaney's non-specific statements that kneeling, squatting, bending, and climbing would be "somewhat difficult" for Corbin and that he "would have difficulty performing work activities." *Id.*

Per the Court's necessarily deferential review in this scenario, substantial evidence supports ALJ Francis's decision to more heavily weigh Dr. Chaney's specific findings that Corbin had some ability to sit, stand, move, and carry than his relatively vague opinions concerning potential kneeling, squatting, bending, climbing, and—as a textually generic matter—working difficulty. As ALJ Francis noted, the former opinions are consistent with Dr. Chaney's objective clinical findings. R. at 535 (finding 5/5 strength throughout, no gross motor dysfunction, normal fine/gross manipulation skill, and 5/5 grip strength, among other things). The bending, kneeling, squatting, and climbing findings, on the other hand, largely lack supporting objective clinical observations and appear, rather, at least in large part based on Corbin's self-reports. Dr. Chaney's sitting, standing, moving, and carrying findings are consistent with a full range of light work. *See* 20 CFR § 404.1567(b) ("Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds . . . a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls."); *see also* SSR 83-10, 1983 WL 31251, at *6 (Jan. 1, 1983) (noting that "the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday[,] and "[s]itting may occur intermittently during the remaining time").[12]

Moreover, and as was significant to the ALJ, these findings are consistent with other physicians' observations in the record. *See* R. at 97–98 (Dr. Saranga's November 2016 finding

---

[12] The ALJ was careful to note that the case was not a blank slate. ALJ Erwin had set the mark in his prior decision. The current claim required analysis of the proof in the strike period of August 17, 2016 to December 31, 2017. The ALJ carefully evaluated the physical and mental health records that obtained, applying appropriate temporal and substantive filters. The interim physical proof was quite thin, and the mental impairment proof showed one episode of exacerbation, but otherwise a period of stability and control under treatment. That may not be the only possible view, but it is a substantially supported and reasonable one.

that Corbin could perform a range of light work); R. at 110–12 (Dr. Reed's April 2017 finding that Corbin could perform light work). The consistency between Dr. Chaney's opinions that Corbin could perform some sitting, standing, moving, and carrying—signifying ability to perform light work—and the other medical evidence in the record, as well as these opinions' internal support per Dr. Chaney's own recorded clinical findings, fairly justify ALJ Francis's weight assignments and conclusions. *See* 20 C.F.R. § 404.1527(c)(3) ("The more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight [an ALJ] will give that medical opinion."); *id.* at § 404.1527(c)(4) (providing that "the more consistent a medical opinion is with the record as a whole," the more weight an ALJ will give it). The ALJ applied the proper evaluative standards, explained her reasoning in appropriate detail, and justified her decision with ample record support. And, critically, the Court may not reverse an administrative finding supported by substantial record evidence even *if* substantial evidence *could* be marshalled to support a different conclusion. *Warner*, 375 F.3d at 390. The Court finds that substantial evidence supports ALJ Francis's balancing of the Chaney proof in full record context.[13]

### 3. Substantial evidence supported the ALJ's decision.

Though Corbin designates this argument as a distinct challenge, it subsumes the contentions previously discussed (and rejected, for the reasons noted). Corbin alleges no other particularized infirmities in ALJ's Francis's analysis or decision, and he cites to no other portions

---

[13] The Court also notes that, as the Commissioner asserts, any conceivable error related to the ALJ's decision not to find Corbin limited in bending, kneeling, climbing, etc. would be harmless, and reversal still unwarranted. Two of the three jobs VE Hall identified (cashier or merchandise marker) involved none of these contested activities. *See* DOT 211.462-010 (Cashier II); DOT 209.587-034 (Marker). *See also, e.g., Watson v. Astrue*, No. 08-CV-518-GWU, 2009 WL 3415356, at *5 (E.D. Ky. Oct. 20, 2009) (noting that any error would be harmless where urged additional restrictions would not impact the representative jobs hypothetically available to the claimant, per the VE).

of the record that he perceives relevant to the substantial evidence calculus. Corbin's conclusory, unsupported contention that "the combined effects of Plaintiff's physical and mental impairments, reflect he could not perform a wide range of even sedentary work on a regular and sustained basis" patently merits no relief. *See* DE #18-1 at 16. Corbin, in this section of his brief, cites no portion of the record supporting his attempt to summarily impugn ALJ Francis's RFC conclusion. The Court need analyze this generalized, unsupported argument no further.[14] As the Sixth Circuit noted in response to a similarly oblique contention:

> This challenge warrants little discussion, as [claimant] has made little effort to develop this argument in her brief on appeal, or to identify any specific aspects of the Commissioner's determination that lack support in the record. Under these circumstances, we decline to formulate arguments on [claimant's] behalf, or to undertake an open-ended review of the entirety of the administrative record to determine (i) whether it might contain evidence that arguably is inconsistent with the Commissioner's decision, and (ii) if so, whether the Commissioner sufficiently accounted for this evidence. Rather, we limit our consideration to the particular points that [claimant] appears to raise in her brief on appeal.

*Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 490–91 (6th Cir. 2006). The Court has addressed Plaintiff's sole particularized arguments, finding them unsuccessful for the reasons outlined in detail, based on the full evidentiary record. The ALJ's decision has substantial record support with compliant legal analysis, and, accordingly, the Court may not disturb it on appeal.

---

[14] Corbin's one-sentence reference to an ALJ's "selective inclusion" of unfavorable evidence likewise warrants no substantive treatment. Corbin does not legitimately allege that ALJ Francis selectively omitted any proof, beyond claiming that she misinterpreted Dr. Chaney's full opinion (an argument the Court has already rejected). Moreover, an ALJ need not cite to every single piece of evidence considered. *See, e.g.*, *Simons v. Barnhart*, 114 F. App'x 727, 733 (6th Cir. 2004) (explaining that the "ALJ's failure to cite specific evidence does not indicate that it was not considered[]"); *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (citation omitted). A fair reading of ALJ Francis's decision demonstrates that she reviewed and carefully canvassed the full record, and her conclusion is supported by a substantial body of proof.

15

### IV. Conclusion

For all of the reasons discussed, the Court **GRANTS** the Commissioner's summary judgment motion (DE #22) and **DENIES** Plaintiff's competing effort (DE #18). A corresponding Judgment follows.

This the 10th day of July, 2020.

Signed By:
*Robert E. Wier* /s/ REW
United States District Judge